UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERMAIN MARVIN ALEXANDER,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

Case No. 1:09-CV-889
(Criminal Case No. 1:06-CR-312)

HON. GORDON J. QUIST

# OPINION

This Court has before it Jermain Marvin Alexander's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. The Government has filed a response, and Alexander has filed a reply. After reviewing the motion and briefs, the Court concludes that Alexander's arguments are without merit and he is not entitled to relief.

## I. Procedural History

On December 14, 2006, a grand jury returned a one-count Indictment against Alexander, charging him with possession with intent to distribute more than 50 grams of cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Alexander pled guilty to the offense on January 31, 2007, before a magistrate judge. At the time of the plea Alexander did not have a plea agreement with the Government, and the magistrate judge thoroughly discussed this fact on the record, including Alexander's refusal to cooperate with the Government as the reason for no plea agreement. (1/31/07 Plea Tr. at 5. 13-14.) This Court accepted the guilty plea on March 2, 2007, including the magistrate judge's recommendation that

Alexander be allowed to remain on bond due to his being in end-stage renal failure and his need for dialysis three times per week.

On June 7, 2007, this Court sentenced Alexander to 360 months imprisonment and five years of supervised release. Prior to the sentencing hearing, the Government filed a motion to revoke bond, based upon Alexander having been arrested on May 10, 2007, and found to be in possession of marijuana and crack cocaine. Based upon this conduct, the Court declined to give Alexander a downward adjustment for acceptance of responsibility and overruled his objection to the Presentence Investigation Report recommendation that no adjustment be made for acceptance of responsibility. (6/7/07 Sentence Tr. at 3-4.)

Alexander appealed his sentence to the United States Court of Appeals for the Sixth Circuit, which affirmed in a reported decision issued on October 7, 2008. *See United States v. Alexander*, 543 F.3d 819 (6th Cir. 2008). The Sixth Circuit held that Alexander was a career offender and concluded that Alexander's sentence was both procedurally and substantively reasonable. *See id.* at 822-26. Alexander filed a petition for writ of certiorari to the United States Supreme Court, which denied his petition on May 4, 2009. Alexander thereafter filed this timely motion under § 2255.

## II. ALEXANDER'S CLAIMS LACK MERIT

### A. Breach of Plea Agreement/Acceptance of Responsibility

Alexander first argues that the Government breached its promise in the plea agreement that he would receive a sentence reduction for acceptance of responsibility. A review of the record shows that this argument is plainly frivolous. Contrary to Alexander's suggestion, there was no plea agreement, so no breach could have occurred. Moreover, at the plea hearing, Alexander expressly confirmed that he had received no promises in exchange for his plea. (1/31/07 Plea Tr. at 9, 13.)

Furthermore, regarding acceptance of responsibility, as noted above, the Court concluded that Alexander was not entitled to acceptance of responsibility based upon his continued drug dealing while he was out on bond. Thus, Alexander was not entitled to acceptance of responsibility based upon his continuing criminal behavior.

### B. Ineffective Assistance of Counsel

Alexander next argues that his counsel was ineffective for the following reasons: (1) "Counselor did not object to plea agreement at sentencing that government breach [sic] plea agreement for acceptance of responsibility"; (2) "Counselor failed to objected [sic], that his sentenced [sic] was illegally enhanced in violation of Booker, 543 U.S. 200"; (3) "Counsel failed to objected [sic], this court has failed to prove 'beyond a reasonable doubt' sentencing exceeded the maximum guidelines 360 to life"; (4) "Defense counsel failed to objected [sic] to the sentencing court to adhere to Rule 32 of the Federal Rules of Criminal Procedure"; (5) "Defense counsel stated: although I agreed that petitioner is a career offender, that clearly demonstrated he had no defense for me"; (6) "Counselor failed to argued [sic] at sentencing the petitioner, what he was orginally [sic] charged, but relying on Blakely, imposed a sentenced [sic] that was 'based solely' on the guilty verdict in this case"; (7) "Petitioner Alexander, raised no objection at the time of sentencing to the determination that he was a career offender pursuant to USSG 4B1.1 which resulted in an adjusted offense level of 37, a criminal history category of VI, and a guidelines sentencing range of 360 months to life in prison, and he conceded that he was a career offender"; (8) "Objection, counsel failed to review his educational background he would of learned the petitioner plea agreement was not knowingly, willingly, or intelligently, but coerced unvoluntarily"; and (9) "The petitioner has no G.E.D., a ninth grade education level, reads and writes on about a third grade level . . . To be valid a guilty plea must be made voluntarily and with full knowledge of the consequences.

3

Therefore, it's clear the ineffectivness of counsel, this court must reschedule a resentencing hearing."

> The Sixth Circuit has summarized the test for ineffective assistance of counsel as follows:
>
> A two-prong test establishes ineffective assistance of counsel: 1) the defendant must show that his counsel's performance was deficient; and 2) prejudice must have resulted to counsel's defendant from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*
>
> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.
>
> To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. 2052. To determine if Kinnard was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

*Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

The standard under the *Strickland* deficiency prong is whether Petitioner's counsel provided "reasonably effective assistance," and "whether counsel's conduct <u>so undermined</u> the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686-87, 104 S. Ct. at 2064 (emphasis added). There is a presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, to prevail, Petitioner must meet the burden of showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688-89, 104 S. Ct. at 2064. The Court must also not

4

indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Id.* at 690, 104 S. Ct. at 2065-66.

Alexander has failed to show that his counsel was deficient with regard to any of his claims. First, Alexander's claims regarding breach of the plea agreement fail for the reasons set forth above.

Second, Alexander fails to show that his counsel was ineffective in any manner concerning *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). In *Booker*, the Supreme Court addressed whether the federal Sentencing Guidelines and enhancement provisions violate a defendant's Sixth Amendment rights. The Supreme Court concluded that the mandatory federal Sentencing Guidelines are subject to the jury trial requirements of the Sixth Amendment. However, the application of the Sentencing Guidelines does not violate a defendant's constitutional rights so long as the Guidelines are advisory rather than mandatory. Here, the Court treated the Guidelines as advisory in accordance with *Booker*. Moreover, the Court sentenced Alexander within the Guidelines range.

Third, Alexander's claim based upon *Blakely v. Washington*, 542 U.S. 296, 125 S. Ct. 2531 (2004), is difficult to decipher, but fails in any event because the Court sentenced Alexander in an advisory-Guidelines range that did not exceed the statutory maximum. *See United States v. Hague*, 315 F. App'x 510, 530 (6th Cir. 2009) (stating that "sentencing courts may use judge-found facts, proved by a preponderance of the evidence, in setting an advisory Guidelines range – provided that the resulting range does not exceed the statutory maximum authorized by the jury verdict"). Thus, his counsel could not have been ineffective on the basis of *Blakely*.

Fourth, Alexander's claim that his counsel failed to argue that his plea was not knowingly, voluntarily, and intelligently made lacks merit in light of the plea transcript, which discloses the following exchange between the magistrate judge and Alexander at the plea hearing:

THE COURT: And how old are you, sir?

5

THE DEFENDANT: Twenty-six.

THE COURT: All right. And how far did you get in school?

THE DEFENDANT: To the eleventh.

THE COURT: Eleventh grade?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you able to read and write in English okay?

THE DEFENDANT: Not good.

THE COURT: Okay. Well, we will make sure that everything that gets read to you that's important to your case, okay?

THE DEFENDANT: Okay.

THE COURT: Has Mr. Stroba read a copy of the Indictment to you prior to this?

THE DEFENDANT: Yes.

. . . .

THE COURT: . . . . Now, is there anything wrong with you today, Mr. Alexander, either physically or mentally, that would make it difficult for you to understand what is going on here?

THE DEFENDANT: No ma'am.

THE COURT: I understand you have some fairly serious health problems; is that correct?

THE DEFENDANT: Yes ma'am.

THE COURT: And what caused your health problems?

THE DEFENDANT: High blood pressure.

THE COURT: All right. Is that under control now?

THE DEFENDANT: Yes ma'am.

THE COURT: All right. And there is nothing about your dialysis or your health otherwise that would make it difficult for you to understand what I'm saying to you or what is going on here?

6

THE DEFENDANT: No ma'am.

THE COURT: All right. Have you had any alcohol, prescription medication, over-the-counter medication, or other drugs in the last 24 hours that would make you sleepy, dizzy, drowsy, confused, anything like that?

THE DEFENDANT: No, ma'am.

. . . .

THE COURT: And have you had the chance to ask [Mr. Stroba] any questions you've had about your choices or your situation?

THE DEFENDANT: Yes, ma'am.

THE COURT: And has he answered those to your satisfaction?

THE DEFENDANT: Yes, ma'am.

. . . .

THE COURT: And Mr. Alexander, do you think you understand what you've been charged with that you are going to plead guilty to?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you think you understand that there is a minimum and a maximum penalty for that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand also that you are giving up certain rights that you have and what those rights are?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And how do you plead?

THE DEFENDANT: Guilty.

THE COURT: All right. Have there been any force or threats brought against you to get you to plead guilty?

THE DEFENDANT: No ma'am.

THE COURT: Have there been any promises made to you?

>    THE DEFENDANT: No, ma'am.
>
>    THE COURT: Is it a voluntary and a free will act on your part?
>    THE DEFENDANT: Yes, ma'am.

(1/31/07 Plea Tr. at 4-13.)

In *United States v. Hyde*, 520 U.S. 670, 117 S. Ct. 1630 (1997), a unanimous Supreme Court reiterated the importance of the plea proceeding under Fed. R. Crim. P. 11. Pleas are not to be lightly entered into nor are they lightly accepted by this Court. *See id.* at 674-76, 117 S. Ct. at 1632-34. In this case, all of the requirements of Rule 11 were met. Alexander entered an informed and voluntary plea in which he acknowledged, under oath, that he understood his rights and the consequences of his plea. He acknowledged that no one made him any promise about what sentence would be imposed. The magistrate judge found that he understood all of this. Alexander has shown no reason why his plea or sentence should be set aside.

Fifth, Alexander's arguments regarding his career offender status lack merit, because the Sixth Circuit found that Alexander was correctly classified as a career offender based upon his prior felony convictions. Thus, Alexander's counsel could not have been ineffective. Moreover, a § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances, such as an intervening change in the law. *See DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996); *see also Wright v. United States,* 182 F.3d 458, 467(6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996). As a general rule, sentencing matters decided on direct appeal may not be relitigated under § 2255. *See DuPont*, 76 F.3d at 110-11. No such exceptional circumstances exist here.

Similarly, Alexander's claims regarding the constitutionality of the career offender enhancement are barred by his failure to raise them on appeal. Regardless, such claims lack merit because "it is well established that habitual criminal laws, which the career offender guidelines

8

emulate, withstand ex post facto and double jeopardy challenges." *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991) (citing *Spencer v. Texas*, 385 U.S. 554, 560, 87 S. Ct. 648, 651-52 (1967)). Thus, Alexander's counsel could not have been ineffective for failing to raise an argument that lacked merit. *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998) ("Appointed counsel cannot be deemed ineffective for failing to raise frivolous claims."). Finally, Alexander's "clearly unreasonable" sentence argument fails because it also lacks merit. Contrary to Alexander's assertion that his prior conviction was for fourth degree fleeing and eluding, Alexander was convicted of violating M.C.L. § 750.81d(2), which "entail[s] committing a crime of violence." *Alexander*, 543 F.3d at 823.

### C. Judicial Misconduct/Bias

In his motion and supporting brief and his affidavit/reply, Alexander asserts that he is entitled to have a different judge resentence him and/or decide his § 2255 motion because this Court engaged in judicial misconduct and/or is biased against him. Alexander fails to cite any basis for concluding that the undersigned committed judicial misconduct or is biased against him. Alexander's dissatisfaction with his sentence is an insufficient basis for a claim of judicial bias. *See Amadasu v. Mercy Franciscan Hosp.*, 515 F.3d 528, 530 (6th Cir. 2008) (noting that assertions of judicial bias based upon dissatisfaction with court rulings are insufficient to show judicial bias required for recusal).

### III. NO CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Alexander has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment

9

of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Alexander's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of Alexander's claims was debatable or wrong. Therefore, the Court will deny Alexander a certificate of appealability.

## **Conclusion**

For these reasons, Alexander's § 2255 Motion (docket no. 1) will be dismissed. In addition, the Court will deny Alexander a certificate of appealability as to each issue raised because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.


Dated: June 23, 2010  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE